Welcome to the Fifth Circuit. Those who have not been here before, a particularly warm welcome, but the rest of you as well. We have three cases today. We're probably here to take a break and hear the last one. Our lighting system is particularly important to us. The light you need to watch for, from my viewpoint, is the red one. You'll have a two-minute warning with the yellow light, but when the red comes up, you need to stop. Finish your sentence. No William Faulkner punctuation going on for two pages, just for semicolons. Finish your sentence. If you need more time, we will consider giving it to you. The first case for the day is U.S. v. Smith v. Robinson. Mr. Greenwald, are you first? Good morning. My name is Joey Greenwald. I represent Halston Smith, one of the co-defendants in this matter. Your Honors, our main argument at trial and on appeal for Mr. Smith is regarding the use of a weapon, portion 18 U.S.C. 924, the aiding and abetting. Mr. Smith participated in six robberies. In five of those robberies, he acted as the getaway driver or the lookout. In one of the robberies, he did go in the establishment, but for the other five, his role was fairly limited to driving the car. The other guys got out of the car, went in the establishment, robbed the place, got back in the car, and he drove off. Let me make sure I understand the multiple robberies that were occurring. Is your argument really that he was unaware, at least after the first robbery, which I think was at the Pizza Hut, is that correct? Was the first one that your client was involved with? Yes. That he was unaware that a gun was used in the first robbery? He was unaware a gun was used in the second robbery? It does seem to me one way to look at this evidence is just the opposite, that the only argument you really have is as to the first robbery. And once a gun was used then, it's reasonable for him to expect it would be used in the later robberies. What's your response? I would focus more, and I agree with your point in that scenario. You're right. But when this trial was held in January of 2013, that was prior to the United States Supreme Court of Rosamond coming down. Prior to the Rosamond case, we were looking at two Fifth Circuit cases, U.S. v. Lopez and U.S. v. Soros, that said in order for the government to convict, they have to prove two things. One, that the defendant actually participated in the crime. But two, that he advanced the use of the weapon. So it's not enough that he just knew that the crime was going on or he was the lookout driver. He had to take some affirmative step in advancing the use of the gun. And our argument was at that time that there was insufficient evidence to show being the getaway driver of the lookout, he didn't take any step to further that gun. Now since the trial in March of 2014, Rosamond came out changing that and said in order to get a conviction, you have to have two things, active participation in the trial and advanced knowledge. But Rosamond comes out in March. You file your brief in October and you don't mention Rosamond. That's correct, Your Honor. So your argument to us is an insufficiency under the original Fifth Circuit pattern rule. My argument is twofold. The first argument is insufficient evidence under the Fifth Circuit rules. But even under Rosamond, which was not addressed in my original brief, but in my reply brief, they talked— What's the authority that you can resuscitate an issue that you've abandoned? I don't have any authority on that, Your Honor. Well, you might if—I don't know what the case law says. The fact that the government then brings it up, does that allow it? And that's why I addressed it in my reply brief because it was brought up. And the government's relying on it to foreclose my sufficiency of evidence. So if we're going to use the case, I would submit that we use it in full. In particular— So Rosamond invalidates the Fifth Circuit pattern instruction that you accepted at trial. Is that your position? Instead of advanced use, it's now advanced knowledge? And that's—the two are inconsistent, you think? That's correct, Your Honor. But in addition, Rosamond also said—addressed the jury instructions. And it said we have to have jury instructions that use the language. You have to have advanced knowledge in order to give the person time to withdraw from the activity. So he admitted in his confession that he knew a 12-gauge shotgun was used. And he was in the same car with the individual that has the shotgun. And then he ends up discarding it, focusing on the Pizza Hut robbery, the first one. Correct, Your Honor. It's still your position that's not enough for a jury to infer that he had advanced knowledge the gun would be used? Under Rosamond, our argument is very limited. It's almost foreclosed whether or not he—I would submit that Rosamond weakened the burden of proof. He was—Holson Smith was convicted under a higher standard that he actively used a gun. So even if you look at Rosamond, which is a weaker standard, I would have to agree that it would be easier to convict him. But it's almost like we changed the rules after the game. We weren't focused on whether or not he had advanced knowledge at trial. We were focused on did he actively use the gun during the robbery. Was that gun his? Yes. There was a footnote in your brief. Yes, Your Honor. Yes, the Pizza Hut gun was his gun. There were several guns, and he owned a few of them, yes, Your Honor. But I'm asking you specifically. I would—yes, Your Honor. Okay. He owned the shotgun, yes, Your Honor. In addition, we raised a couple of claims, and a lot of these have been foreclosed. The 18 U.S.C. 924C, the stacking provisions deal clearly says it's permissible. The deal was rendered before the Booker case where it kind of changed the landscape. The U.S. Sentencing Commission has specifically looked at 18 924 as one of the examples that Congress needs to look at, change the law on it. For that reason, we would put it before the court. If the court would be inclined to address it, it's here to address. But I understand that that issue has been ruled upon. The Eighth Amendment claim. Mr. Smith, there was one robbery that occurred in June of 2013, and then there was a lull. But from September 30th to November 14th, the string of robberies occurred. And they were horrendous robberies. I can't make light of that. But he got 138 years for them, and I would submit that that's cruel and unusual punishment. It's an excessive sentence based on the facts of the case. He really doesn't have to serve that length of time. He got a life sentence. Correct. Correct? And so the real issue is under the Eighth Amendment is a life sentence for these offenses, cruel and unusual. Is that a fair statement? That's a fair statement. I would submit it is. The case law is contrary. Lastly, Your Honors, there were some pretrial motions that we filed. There was a GPS tracking device used to locate him. I would ask the Court, based on the brief, on the totality of the circumstances, there were some inconsistencies placed in the application that might invalidate the actual order granting the GPS system. There was a motion to suppress for some interrogations. After he was arrested, he gave multiple statements to multiple law enforcement agencies. He had consumed alcohol earlier in the day. He had taken a Lortab. He was told by the officers that it would be in his best interest to talk or he'd serve a life sentence at Angola, and he talked. We would submit, based on the totality of circumstances, that the statement should have been thrown out. What evidence is there of intoxication? His affidavit or allegation to that effect? His statements to the police, and in his truck there was a bottle of vodka, a half-empty bottle of vodka found in his truck at the time of arrest. On a video played at trial, you could clearly see one of the officers gave him a pretty good knee to the head. When they arrested him. That claim wasn't raised until your reply brief about the knee to the head, so wouldn't that be waived? Yes, Your Honor. I apologize. All right, counsel. Did you save time for rebuttal? Yes, Your Honor. Thank you. All right. Good morning, Your Honors. Good morning. My name is Betty Merrick. I'm the Assistant Federal Defender in Shreveport, Louisiana. I represent Miles Robinson in these proceedings today. Basically, my brief was limited to two of the same claims that Mr. Greenwell has already talked about. One of those is the 924C stacking claim. I freely admit in my brief that Deal forecloses that issue in this circuit. However, we do argue that Deal was wrongfully decided and should be reconsidered in light of Booker and the criticism of the mandatory minimums that the Supreme Court and the Sentencing Commission have been receiving from various courts. Many of the circuits have expressed their great displeasure with the 924 stacking claims, especially in cases like this where we have a 19-year-old defendant who has a few minor misdemeanor convictions. He's never served longer than about 30 days in jail and suddenly has received, I would submit, what are three life sentences consecutively. He has a 314-year sentence, and even with his good time credit, his sentence would become 266 years, a sentence he could never possibly expect to serve. He had quite a crime spree during this period of time, assuming the evidence supports that. That is correct, Your Honor. My client was involved in all 13 of the robberies and actually carried the gun in all 13 of the robberies and admitted immediately upon arrest to having possessed that particular weapon. The issue that we raise is, in fact, he was 19 years old, and the first robbery happened in June. It was the Circle K robbery. Mr. Greenwald's client was not involved. One of the other co-defendants was who received, I think, a seven- or eight-year sentence for these robberies. Then there was a gap from June until September. Did he plead? The one who got the seven- or eight-year sentence, did he plead? Originally, there were four co-defendants. Two of them pled guilty and agreed to cooperate against Mr. Greenwald's client and my client at trial. Their sentence was a ten-year cap. Did they end up testifying at trial? They did not end up testifying at trial. My recollection is that they actually refused to testify at the trial when they were going to be called to do so, and the government chose not to call them in light of the fact that they had our client's confessions and didn't really need their testimony about the involvement in the robberies. Basically, my argument contains . . . is about the 924C and that in light of Booker and the new wave of discouraging mandatory minimums that we should return to giving the judge's discretion to apply what would be a fair sentence in this case, which I submit probably would have been substantially less than the 314 years that Judge Foote was actually forced to impose because of the way the government charged this case with the 13 robbery counts and the 13 stacking counts. We are sort of stuck with Deal for now. Yes. Do you have another argument? My only other argument is the Eighth Amendment claim, which I think Mr. Greenwald adequately addressed, which is the cruel and unusual punishment, and it is that both of these clients could never hope to even serve even the good time portion of their sentence. They're not going to live to be 266 years old plus the 19 years they've already lived. So that's really the only argument I have about that. All right, counsel. Good morning, Your Honors. My name is Mignon Griffin, and I represent the United States of America. Your Honor, as Ms. Merrick acknowledged in her brief, her client and Mr. Greenwald's client made the fateful decision to roll the dice and go to trial in this case despite the fact that they had each confessed to participating in a number of armed robberies. Mr. Smith participated in seven. Six were charged as substantive offenses. One occurred in Texas, so it was charged as an overt act in furtherance of the conspiracy, and Mr. Robinson participated in 15, two of which were in Texas and thus charged as overt acts in furtherance of the conspiracy. They received a fair trial, and they received a stiff sentence that was based on the number of robberies in which they participated and the use of multiple firearms, many of which did belong to Mr. Smith, as he concedes in his argument. As this court recognized in Thomas, Congress made a rational judgment that those who commit violent felonies and continue over time to commit felonies, as Your Honor pointed out, this was a crime spree, must be incapacitated, and therefore I would submit that their lengthy sentences do not violate the Eighth Amendment. In Thomas, the defendant received effectively a life sentence for five bank robberies, and this court upheld that. One thing that wasn't clear to me, the order allowing the GPS device to be attached was entered on October 22. As of that date, seven maybe of these offenses had occurred, and then the rest of them occurred. When was the GPS attached? Why did this go on so long after the order on the GPS? Your Honor, I must be honest. I don't know, and I don't know that the record reflects exactly when the GPS was attached, but once it was, I don't know, Your Honor. Okay. I just don't know. Well, not race is an issue. It seemed odd, and I was just wondering if they were being monitored all this time and surely not allowed to continue their spree after enough evidence was acquired. But nonetheless, why don't you proceed? Well, I will point out, Your Honor, that the GPS, I'm sorry, I'm getting away from the mic. The GPS was attached to Mr. Smith's truck, and there were a number of robberies that involved Mr. Robinson and other individuals other than Mr. Smith. So those would not have been assisted by the fact that the discovery of those robberies would not have been assisted by the fact that Mr. Smith's truck was being monitored, and they were arrested immediately following an armed robbery, I would assume based on the GPS. That actually did not come out. The GPS affidavit, was their attack on it a bare-bones affidavit, or was it that material information had been omitted? In the district court, Your Honor, it was that it was a bare-bones affidavit. But on appeal? On appeal, they argued that there were material omissions or inconsistencies. That was never explored at the district court because the defendants waived an evidentiary hearing. So the magistrate judge decided it on the motions only. The same with the statements that the defendants gave. The magistrate judge had the opportunity. They were recorded statements. Forgive me, I don't recall if they were oral only or if they were also video-recorded statements. But the magistrate judge had the opportunity to review the statements and make a finding, a factual finding, that Mr. Smith did not appear to him to be intoxicated. Mr. Smith had acknowledged to the officers that he had used a lure tab approximately four hours earlier and that it did not affect his judgment and that he understood what was going on. And if Your Honors watch the video specifically with the Shreveport Police Department, which is the longest and the first of the interviews, you can see that his answers to the questions are appropriate. He's not falling asleep. It was early in the morning, but he's not falling asleep. They're not asking him what color is this guy, and he says seven. I mean he's answering the questions that are asked of him in an appropriate manner. Was there any—there was no expert testimony, was there, about a lure tab and whatever this alcohol allegedly was mixed together four hours before an interview, what that would do to the person? Your Honor, I don't believe that there was any evidence that he actually drank the alcohol. I know that there was a bottle found in his vehicle, but he—when they ask him if he— Well, I guess what I'm asking is that he makes that allegation, and I'm not sure what evidence there is to support it, but just did the judge in deciding on the suppression have any evidence as to if that happened, what the effect on him would have been? No, it was submitted by the defendant, Your Honor. No, sir. Okay. As far as the 924C issue, I tried very hard to find case law. I know that the Department's position and the position of the Supreme Court on Griffith v. Kentucky is that newly issued law applies to cases on direct appeal. I honestly could not find any cases where it was applied against the defendant on direct appeal. So you weren't contending that they abandoned it even by not raising it in their principal brief? I think that his—I think that he abandoned his jury instruction issue, Your Honor, because he didn't raise it until his reply brief, because if he felt that the jury instruction was inadequate on knowledge, he's right. The jury instruction required much more of the government than is required now under Rosemond. Well, that's your position, and he embraced it. It isn't really how I—I'm sure you've looked at Rosemond closely. Justice Kagan's description is the government doesn't win and the defense doesn't win. I'm going to come up with a new theory that the operative issue is choice and therefore advanced knowledge. So the government didn't win. The U.S. government's position didn't prevail. So if we're looking at two splits and the Fifth Circuit had this facilitate or encourage use of gun, which sounds stricter certainly than the Tenth Circuit and the D.C. Circuit, just knowledge of gun, but now the Supreme Court's come up with an entirely different landscape, that the element that's got to be shown is advanced knowledge of the gun. So, well, I guess here let me put that into a question. Is it your position that our pattern instructions, which were given here, are completely fine under Rosemond, need no adjustment? I submit that the instruction that was given by Judge Foote in this case— It's just a pattern instruction. —embraces the knowledge requirement of Rosemond. But it's not a knowledge requirement. It's an advanced knowledge. Yes, sir. But I believe that to facilitate the use of the gun, you had to know in advance and act in a way to encourage the use of the gun. But is that necessarily so? Because I think the scenario that Justice Kagan and the Supreme Court are contemplating is if someone just ends up in a melee and then they say, yeah, pull the gun, pull the gun, that wouldn't show advanced knowledge sufficient for them to have withdrawn and not to have been an aider and a better. So look at your facts. You aren't saying that just because he said a gun was used means that he had advanced knowledge. I think that the evidence in this case shows that he had advanced knowledge, Your Honor. I believe that Justice Southwest is correct. We're only talking about the Pizza Hut robbery here. So what's the best evidence that he had advanced knowledge other than that he was in a car with a man who had a gun? A shotgun, Your Honor. A shotgun. Not just a gun. Okay. So your best evidence that he advanced knowledge is that the gun would have been too big. It was his gun and it was too big. Well, but his gun, he conceded that at oral argument. Is that in the record anywhere, that the Pizza Hut gun is his gun? No, it's not. It's not. He conceded that. I was grabbing hold of that. I admit that. But, Your Honor, it was – Let me ask you this. If we were looking for the evidence, is it even in the evidence that the two of them were in the same vehicle going to the Pizza Hut robbery? He was the getaway driver, Your Honor. That implies to me that they were in the same vehicle. Unless they were in multiple vehicles, I don't know. But was there actual – well, you may not have been looking at that, but I didn't see where there was any direct evidence that the two of them were in the same vehicle going to the Pizza Hut. And a lot of this circumstantial, reasonable inferences, whatever else, is that probably what we're dealing with? I admit that I am assuming, Your Honor. I don't recall specifically, but when I hear someone is the getaway driver, I assume he's sitting in the parking lot with the engine on, waiting for them to run out and jump in his truck and drive off. There were three participants in that robbery, two that went in, and Mr. Smith, who waited in his car. So one vehicle would have been more than sufficient. It's not like there were six robbers, and therefore they needed a van or multiple vehicles. If it's just the Pizza Hut, it's not going to change the sentence. It will not. But you may also be right with an oral concession that it was his gun. I think that may answer it. My concern really is do we try to give indication to all district courts in the Fifth Circuit that the pattern instruction is in disharmony with current law? Well, I think that the pattern instruction is because of the last sentence, which says there must be proof that . . . This is the instruction given by Judge Foote. There must be proof that the defendant acted in a way to facilitate or encourage the use or carrying of the firearm. It's close, but it's not exact. But the sentence before that, that he acted with the knowledge or specific intent of advancing the use of the firearm, I think more than encompassed the knowledge requirement. And as far as the factual evidence to support him knowing about the shotgun, as I said, I assume that they were in the same vehicle. But the shotgun, if you watch the video, I know that at various times there is described a sawed-off shotgun and then just a shotgun. And honestly, I don't know if there were two shotguns. But in the video of the Pizza Hut robbery, it is not a small weapon. You can see the defendant, Mr. Robinson, doing this with it. And he did not have on a trench coat. He had on a sweatshirt with a hood. So if he was holding it down at his side, it would clearly have been seen. And so I'm submitting that the jury finding that he acted as the jury instructions required then to facilitate the use of the firearm was reasonable. But as Your Honor suggested, it's a moot point under the lengthy sentence that he is serving. Well, moot other than the technical manner where you need to reverse one of the counts of conviction. Yes, sir. But ultimately it will not substantially affect the sentence that he is receiving. But unfortunately, Your Honor, I don't know that this is a good case in which to send out a message to the district courts because of the fact that Rosamond came out after the trial was held. And I do think even though the government's position is that Rosamond applies to all cases on appeal, it seems fundamentally unfair to say, oh, well, he's under a lesser burden, and perhaps I should have dealt with my brief in a different way. No, they overlooked it in October, and you brought it up. So that was commendable. The question is how does it apply. Yes, sir. I'm trying to remember what other issues. I think I have addressed . . . I think I have addressed all of the issues raised by the defendants in their arguments. If there are no further questions for me, I cede back the balance of my time. Thank you, Counselor. Just briefly, Your Honors, the government touched on the defendants elected to go to trial. For what it's worth, that decision was made only after the government decided to extend a plea offer to our clients that was three times greater than the plea offer extended to the other two individuals. I don't know if there's any legal basis for that, but that's why we wound up in trial. On the jury trial issue, the jury charges, the charges we used, we crafted them after the Fifth Circuit cases of Lopez and Soros. Talking about the government must prove that the defendant acted with knowledge or specific intent of advancing the use of the firearm, and there must be proof that the defendant acted in a way to facilitate or encourage the use or carrying of a firearm. Those sentences were taken directly from the Lopez-Soros cases, so now that Roseman is out, I think we would have to use different jury instructions, because the law has changed. But you didn't raise the insufficient or the error in the jury instruction until your reply brief. That's correct, Your Honor. I didn't put it in my original brief, and it wasn't available at trial because the case had . . . It's certainly available in your opening brief. Yes, Your Honor. Thank you. All right, then, unless any of my colleagues have questions. I thank all of you for bringing this case to us.